UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LUIS SANCHEZ ALFONSO,

Petitioner,

v.

PAMELA BONDI et al.,

Respondent.

CASE NO. 2:25-cv-02748-TL

ORDER ON WRIT OF HABEAS CORPUS

This matter is before the Court on Petitioner's Petition for Writ of Habeas Corpus. Dkt. No. 7. Having reviewed the petition, Respondents' return (Dkt. No. 17), Petitioner's reply (Dkt. Nos. 20, 23),[1] and the relevant record, the Court GRANTS IN PART and DENIES IN PART the petition.

---

[1] On December 22, 2025, Petitioner, proceeding *in forma pauperis* ("IFP"), mailed his proposed petition to the Court (Dkt. No. 1); it was docketed on December 31, 2025, upon the Court's granting of Petitioner's request to defer payment of the filing fee. *See* Dkt. Nos. 5, 7. On January 20, 2026, Petitioner filed a document captioned "Memorandum of Points and Authorities Supportive of Habeas Corpus Relief." Dkt. No. 20. This document appears to have been mailed eight days earlier, on or about January 12, 2026—i.e., *before* Respondents filed their return on January 14, 2026. *See id.* at 5. On January 26, 2026, Petitioner filed a document captioned "Petitioner's Reply to Federal Respondents' Return." Dkt. No. 23. This document appears to have been mailed on or about January 20, 2026. *See id.* at 14. The general rule regarding motion practice in this District provides that an "argument in support of the motion shall not be made in a separate document but shall be submitted as part of the motion itself" (LCR 7(b)(1)), so, strictly speaking, Petitioner should have filed the "Memorandum" (Dkt. No. 20) concurrently with his

ORDER ON WRIT OF HABEAS CORPUS – 1

#### I.    BACKGROUND

Records indicate that Petitioner Luis Sanchez-Alfonso was born in Havana, Cuba, in 1985. *See* Dkt. No. 18-4 (Form I-213) at 2. Petitioner is a citizen of Cuba. *Id.* On or about October 10, 1992, Petitioner was admitted into the United States in Miami, Florida, as a lawful permanent resident ("LPR"). *Id.* at 4.

Department of Homeland Security ("DHS") records indicate significant criminal history for Petitioner.[2] Between 2005 and 2009, Petitioner was convicted of multiple crimes in state court in Oregon, including Burglary in the First Degree, Unlawful Use of a Weapon, Criminal Mistreatment in the First Degree, Assault in the Second Degree, and Assault in the Third Degree. *See* Dkt. No. 18-1 (Notice to Appear) at 4; 18-4 at 4–5. According to DHS, "These crimes did not arise out of a single scheme of criminal misconduct." Dkt. No. 18-1 at 4. Additionally, in 2004, Petitioner was arrested in Florida for the offenses of "Damage Prop–Crim Misch." And "Theft is [*sic*] 300 or More But Less than 5000 Dols." Dkt. No. 18-4 at 4. Based on this record, on September 28, 2012, DHS served Petitioner with a Notice to Appear in Immigration Court in Tacoma, Washington. Dkt. No. 18-1 at 2–3. On December 13, 2012, an Immigration Judge ordered Petitioner to be removed from the United States to Cuba and terminated his LPR status. Dkt. No. 18-2 (Order of the Immigration Judge) at 2.

DHS was not able to effectuate Petitioner's removal to Cuba. *See* Dkt. No. 17 at 9 (citing

---

Petition (Dkt. Nos. 1, 7). However, the Local Civil Rules are silent as to whether this provision applies to petitions for habeas corpus brought under 28 U.S.C. § 2241. *See* LCR 100. In any event, Respondents have not objected to the form, sequencing, or timing of Petitioner's submissions to the docket, and the Court will consider the entirety of Petitioner's motion practice in support of his petition. *See Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (discussing district court's inherent authority to control its docket).

[2] This criminal history is based on information recorded in Petitioner's Forms I-862 and I-213, maintained by DHS, respectively dated September 28, 2012, and December 2, 2025. Dkt. Nos. 18-1, 18-4. The Court presents the information here as it appears in the I-862 and I-213 and makes no representation as to its accuracy or inaccuracy. Petitioner does not dispute the information contained in these documents in either his petition or his subsequent briefing.

ORDER ON WRIT OF HABEAS CORPUS – 2

Dkt. No. 19 (Dumo Decl.) ¶ 10). Consequently, on March 13, 2013, Petitioner was released under an Order of Supervision ("OSUP"). Dkt. No. 18-3 (Order of Supervision) at 2–5. The OSUP listed the conditions of release, which included that Petitioner "appear in person at the time and place specified, upon each and every request of the agency"; and that Petitioner "not commit any crimes while on this Order of Supervision." *Id.* at 2, 4. On December 14, 2015, Petitioner was convicted in Douglas County, Oregon, Circuit Court for the offenses of Rape 3rd Degree and Sodomy 3rd Degree.[3] Dkt. No. 18-4 at 4. Petitioner was sentenced to 30 months in prison for each crime. *Id.*; *see* Dkt. No. 18-5 (Notice of Revocation of Release) at 2. Between 2017 and 2022, Petitioner was arrested for parole violation nine times. Dkt. No. 18-4 at 4–5.

On December 2, 2025, U.S. Customs and Border Protection ("CBP") conducted a targeted operation that resulted in Petitioner's arrest. *See* Dkt. No. 17 at 9 (citing Dkt. No. 19 ¶ 12). That same day, ICE revoked Petitioner's OSUP. *See* Dkt. No. 18-5 at 2–3. Prior to issuing Petitioner a Notice of Revocation of Release, ICE created a record titled "Order of Supervision Revocation Assessment." Dkt. No. 18-5 at 5. Under "Supervision Compliance History," the record reads "Failed to report on 12/4/2014, issued citation 3/16/2017, failed to report 04/13/2017. No record of reporting located since. FTA for G-56 on 05/14/2025." *Id.* Under "Criminal History since OSUP release," the record reads "Sodomy in the third degree/Rape in the third (vacated in 2023 for non-unanimous jury); failure to appear arrest; 5 parole violation arrest." *Id.* Under "Special Concerns," the "Other (specify)" box is marked, but there is no explanation of what these other special concerns are. *See id.* The Order of Supervision Revocation Assessment instructs "Revoke OSUP Status – Bring back into custody." *Id.* It was signed on December 2, 2025, at 11:37 a.m. PST. *Id.*

---

[3] On February 1, 2023, these convictions were vacated "due to a nonunanimous jury conviction." Dkt. No. 18-5 at 2.

ORDER ON WRIT OF HABEAS CORPUS – 3

Later that day, ICE created a Notice of Revocation of Release, which was provided to Petitioner. *Id.* at 2–4. According to this record, Petitioner's revocation was based on: (1) Petitioner's 2015 convictions; (2) six arrests for parole violation; (3) one arrest for failure to appear; and (4 an alleged failure to report to the Portland, Oregon, ICE Enforcement and Removal Operations ("ERO") Office on May 14, 2025. *Id.* at 2. The Notice of Revocation advised Petitioner that:

> pursuant to 8 C.F.R. § 241.4 / 8 C.F.R. § 241.13, you are to remain in ICE custody at this time. You will promptly be afforded an informal interview at which you will be given an opportunity to respond to the reasons for the revocation. You may submit any evidence or information you wish to be reviewed in support of your release. If you are not released after the informal interview, you will receive notification of a new review, which will occur within approximately three months of the date of this notice.

*Id.* at 3. The Notice of Revocation was signed by the Acting Field Office Director at 1:33 p.m. PST on December 2, 2025, and served to Petitioner at 2:33 p.m. that same date. *Id.* at 3–4.

Also on December 2, 2025, an ICE officer conducted an "alien informal interview upon revocation of order of supervision under 8 C.F.R. § 241.4(l); 8 C.F.R. § 241.13(i). Dkt. No. 18-6 at 2. "At the interview, [Petitioner] made the following oral response regarding the reasons for revocation: 'The 11-1-2017 arrest was for a 2004 charge and not a new arrest.'; 'All the parole violations are from a case that was dismissed.'" *Id.* Although the form indicated that the interviewing officer should note whether Petitioner had provided any written statement or documentation, the interviewing officer neglected to complete that portion of the form. *See id.*

On December 23, 2025, Petitioner was given a Notice of Removal, indicating that ICE "intends to remove you to <u>Mexico</u>." Dkt. No. 18-7 at 2. Petitioner refused to sign the Notice. *See id.*

ORDER ON WRIT OF HABEAS CORPUS – 4

On December 29, 2025, Petitioner filed the instant petition. Dkt. Nos. 1, 7. On December 31, 2025, Petitioner filed a motion seeking to prohibit Respondents from transferring him to a different facility during the pendency of his habeas litigation. *See* Dkt. Nos. 1-2, 8. The Court construed this motion as a motion for a temporary restraining order ("TRO") and denied it on the grounds that Petitioner had not complied with the notice requirements of Federal Rule of Civil Procedure 65(b). *See* Dkt. No. 6. On January 8, 2026, Petitioner filed another motion for a TRO, seeking his immediate release. *See.* Dkt. No. 11. On January 9, 2026, the Court denied this motion, on the bases that: (1) Petitioner had not "established any threat of imminent, irreparable harm" that was unique to his circumstances; and (2) Petitioner's motion was "duplicative of his habeas petition." Dkt. No. 14 at 2, 3. The Court advised that "Petitioner cannot use an emergent motion for TRO to short-circuit the procedure that the Court has put into place for the specific purpose of expediently resolving habeas petitions." *Id.* at 3.

## II.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). To succeed on a petition for a writ of habeas corpus, a petitioner must show he "is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III.    DISCUSSION

### A.    Regulatory Compliance

Petitioner's case:

> is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in *Zadvydas*. This case is about ICE's authority to *re-detain* [Petitioner] after he was issued a final order of removal, detained, and subsequently released on an OSUP. The DHS regulation, 8 C.F.R. § 241.13(i), applies to non-citizens in Petitioner's situation.

ORDER ON WRIT OF HABEAS CORPUS – 5

*Nguyen v. Hyde*, 788 F. Supp. 3d 144, 149 (D. Mass. 2025) (referring to *Zadvydas v. Davis*, 533 U.S. 678 (2001)). [4] "Once ICE releases a [noncitizen] on an OSUP, 'ICE's ability to re-detain that noncitizen is constrained by its own regulations.'" *Manivong v. Bondi,* No. C25-6747, 2025 WL 3211455, at *5 (C.D. Cal. Sept. 3, 2025) (quoting *Roble v. Bondi*, No. C25-3196, 2025 WL 2443453, at *3 (D. Minn. Aug. 25, 2025)). "Courts have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." *Saengphet v. Noem*, No. C25-2909, 2025 WL 3240808, at *7 (S.D. Cal. Nov. 20, 2025) (collecting cases).

Petitioner asserts that "Respondents' actions by re-detaining him and/or during his re-detention is violative of APA and/or petitioner's rights of procedural and/or substantive Due Process under the Federal 5th Amendment when they failed to provide apt notice AND/OR a timely interview thereafter." Dkt. No. 7 at 4. Petitioner argues that:

> Soon after his civil arrest, he was only given a few seconds to read the reasons thereof, and wasn't allow [*sic*] to get a copy thereof; ICE officer who swiftly showed him idem [*sic*] wrote, personally and selectively, petitioner's response thereto, albeit petitioner desired to write other relevant and mitigating information. Likewise, Respondents have still not conducted an initial informal interview soon after his civil arrest as mandated by 8 C.F.R. § 241.13(i)(3).

*Id.*

Respondents counter by first asserting that "Congress established a clear statutory

---

[4] In any event, Petitioner has not demonstrated that he has been subjected to post–removal order detention longer than the presumptively reasonable six-month period established in *Zadvydas. See Zadvydas*, 533 U.S. at 701. Petitioner avers that he was detained for 90 days between December 2012 and March 2013. *See* Dkt. No. 12 (Pet'r Decl.) ¶ 2. Petitioner remained out of immigration custody until December 2, 2025, when he was re-detained. *See* Dkt. No. 18-5 (Notice of Revocation of Release). In total, then, Petitioner has been detained for less than six months. When calculating the length of a noncitizen's detention for the purpose of determining reasonableness under *Zadvydas*, the Court aggregates the noncitizen's stretches in immigration detention; it does not count time spent out of detention or in detention unrelated to immigration. *See, e.g.*, *Jaranow v. Bondi*, No. C25-2396, 2026 WL 35864, at *3 (W.D. Wash. Jan. 6, 2026).

ORDER ON WRIT OF HABEAS CORPUS – 6

framework in 8 C.F.R. § 241.13(i) that sets forth the requirements and process for affecting [*sic*] an OSUP revocation." Dkt. No. 17 at 13. This is incorrect in two ways, one conceptual and one substantive. First, a provision in the Code of Federal Regulations is regulatory, not statutory, and is imposed by an agency, not enacted by Congress. Part 241.13(i) was promulgated by the Department of Justice through the administrative rulemaking process; it was not passed by Congress and signed into law by the President. *See* Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967, 56979 (Nov. 14, 2001) (to be codified at 8 C.F.R. § 241.13(i)). This is a significant distinction. In administrative law, an agency frequently writes its own rules, an inherently dicey proposition that demands—and is subject to—judicial oversight. *See* 5 U.S.C. §§ 701–706 (judicial review under the Administrative Procedure Act). Affording a regulation the same authority as a statute inherently bestows upon the agency that created it an authority equivalent to that of Congress, which in our three-branch system of government implies an authority equivalent to that of the judiciary. This cannot be. Agencies "are creatures of statute, bound to the confines of the statute that created them, and lack the inherent equitable powers that courts possess." *U.S. Fidelity & Guar. Co. v. Lee Invs. LLC*, 641 F.3d 1126, 1135 (9th Cir. 2011).

Second, the framework is not as "clear" as Respondents assert. *See, e.g.*, *Saelee v. Bondi*, No. C25-2677, 2026 WL 221513, at *6 (W.D. Wash. Jan. 28, 2026) ("[A]n informal interview is amorphous, because 8 C.F.R. § 241.13(i)(3) provides no language to describe any particular process. . . . The regulation risks authorizing precisely the type of arbitrary deprivation of liberty the Due Process Clause forbids."); *Ghafouri v. Noem*, No. C25-2675, 2025 WL 3085726, at *5 (S.D. Cal. Nov. 4, 2025) ("Respondents admit '[i]t is unclear whether Petitioner's conversations with ICE officers to date amount to an informal interview . . . .'"). Such ambiguity is further illustrated by the disconnect between Respondents' conduct, as documented by record evidence,

ORDER ON WRIT OF HABEAS CORPUS – 7

and their characterization of that conduct as exemplary, as documented in their briefing. *Compare* Dkt. Nos. 18-5, 18-6, *with* Dkt. No. 17 at 13–14.

Respondents then assert that:

> ICE properly took custody of Petitioner based on its determination that Petitioner violated the conditions of his release. Upon revocation, ICE provided Petitioner with written notice of the specific reasons for its determination, which included a list of Petitioner's many violations. That same day, an ICE Officer conducted an informal interview with Petitioner, giving him an opportunity to respond to ICE's determination. Accordingly, Petitioner's unevidenced contentions that he was detained without cause, notice and an opportunity to respond are simply incorrect.

Dkt. No. 17 at 13.

The Court agrees with Respondents that Petitioner's assertions that he was not provided a "timely interview" are incorrect. The record indicates that Respondents indeed provided Petitioner with the interview. *See* Dkt. No. 18-6 (Alien Informal Interview). But Respondents do not rebut Petitioner's assertions about the *adequacy* of the interview. Instead, Respondents presume, without addressing Petitioner's factual allegations about the performance of the interview, that they substantively complied with the regulation. In this regard, the Court agrees with Petitioner that Respondents fell short of meeting their own self-imposed regulatory obligations.

Under 8 C.F.R. § 241.13(i)(3):

> Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification. The [noncitizen] may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and

a determination whether the facts as determined warrant revocation and further denial of release.

Here, Respondents properly notified Petitioner of the reasons for the revocation of his OSUP. *See* Dkt. No. 18-5 (Notice of Revocation of Release). Petitioner was advised, "[Y]ou have violated conditions of your release that were listed in the Order of Supervision you were issued at the time of your release from ICE custody, e.g., you have violated the conditions of your release as follows . . . ." *Id.* at 2. The Notice listed Petitioner's December 14, 2015, conviction; a November 1, 2017, arrest for Failure to Appear; six Parole Violations; and noted that Petitioner "[had been] sent a notice to report to the Portland, Oregon ERO office on 05/14/2025[, but that] [n]o record of reporting on that date can be found." *Id.*[5] At this point, however, Respondents' conduct ceased to comport with the Regulation.

The Regulation specifically contemplates a prompt initial informal interview, 8 C.F.R. § 241.13(i)(3), which it appears Petitioner at least nominally received. But the Regulation also requires that the noncitizen be "afford[ed] . . . an opportunity to respond to the reasons for revocation stated in the notification." *Id.* This includes both: (1) an opportunity for the individual to "submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision"; and (2) a revocation custody review that "will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." *Id.* Based on the record, the

---

[5] As to this final entry, Respondents' inability to find a record of Petitioner's appearance is merely circumstantial evidence that such an appearance never took place. It is, however, direct evidence—and therefore more probative—of the twin possibilities that no record was ever created; or that such a record was lost, neither of which is something that should be held against Petitioner. The Court is not persuaded here that Respondents' failure to produce a record definitively demonstrates that the event the missing record was supposed to memorialize never took place.

ORDER ON WRIT OF HABEAS CORPUS – 9

Court concludes that Petitioner was not afforded this opportunity and was not given the process that the Regulation requires. First, Petitioner avers that he had "less than 15 seconds to peruse the notice containing revocation reasons," and that his informal interview "last[ed] less than one minute." Dkt. No. 23 at 6. Petitioner asserts that he "was compelled to swiftly and blindly contest his OSUP revocation on [the] same day as his arrest without ability to submit exculpatory or mitigating evidence supportive of release." *Id.* at 1–2. Petitioner suggests further that the record of the interview may be incomplete, because the "ICE officer can pick and choose what to write about [Petitioner's] response." *Id.* at 6. Respondents do not rebut these assertions, and the record of the interview—in which the interviewing ICE officer recorded a mere 24 words of Petitioner's purported "oral response regarding the reasons for revocation" (*see* Dkt. No. 18-6 at 2)—supports Petitioner's description of a perfunctory and incomplete encounter.

Further, the very next day, December 3, 2025, ERO sent a Travel Document Request to headquarters to obtain a travel document to remove Petitioner to Cuba. Dkt. No. 19 ¶ 14. Given the speed with which Petitioner says the whole process occurred, coupled with the fact that a request for travel documents was sent the very next day (even though Petitioner was not interviewed until mid-afternoon), it is unclear how the procedure set forth in the Regulation could possibly have been followed. There could not have been any consideration of Petitioner's response to the "reasons for revocation stated in the notification," because ICE had made up its mind to revoke the OSUP before it heard Petitioner's response and clearly gave Petitioner no time (or clearly insufficient time) to gather any evidence or information before conducting a revocation custody review. The uncontested facts here suggest a performative process at best and a sham process at worst. Either way, the process utilized contravenes the Regulation and represents a substantial violation of Petitioner's rights. *See Bedrosian v. Noem*, No. C25-2814, 2026 WL 127800, at *9 (C.D. Cal. Jan. 15, 2026) ("Requiring ICE to follow these procedures 'is

not mere puffery, a gesture that is irrelevant so long as the result is correct. . . . After all, without due process, there is no way to tell whether the result is in fact correct.'" (quoting *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 157, 144 (W.D.N.Y. 2025))). Had Respondents complied with the regulation and provided Petitioner the process due under it, they might very well have been able to (and may be able to in the future) legitimately revoke Petitioner's release. But here, on this occasion, their rush to revoke and remove doomed the effort.

The remedy for Respondents' misconduct is Petitioner's immediate release from custody, "thereby returning [Petitioner] to the status quo before his release was improperly revoked." *Hoang v. Noem*, No. C25-3177, 2026 WL 89319, at *5 (C.D. Cal. Jan. 12, 2026) (finding that merely ordering ICE to provide the "initial informal interview[,]" after "more than two months [of] re-detention, would not cure the violation suffered by" petitioner); *see also Delkash v. Noem*, No. C25-1675, 2025 WL 2683988, at *5 (C.D. Cal. Aug. 28, 2025) (collecting cases).

Therefore, based on Respondents' regulatory failure, the Court GRANTS Petitioner's petition.

**B.    Injunctive Relief**

In addition to his release, Petitioner seeks three specific injunctions. First, Petitioner seeks an order that "enjoin[s] respondents from re-detaining [Petitioner] under 8 USC 1231 until they have obtained valid travel documents." Dkt. No. 7 at 8. Second, Petitioner seeks an order that "enjoin[s] [Respondents] from re-detaining [Petitioner] unless and until the procedural requirements set forth in 8 CFR § 241.4, 241.13 are followed." *Id.* Third, Petitioner seeks an order that "enjoin[s] [Respondents] from applying their third-country removal policy until it passes statutory and Constitutional muster." *Id.* A plaintiff or petitioner "seeking a permanent injunction must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;

ORDER ON WRIT OF HABEAS CORPUS – 11

(3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

As to the first request, the relief Petitioner seeks does not represent an appropriate application of the law. Petitioner does not point to any authority—and the Court is unaware of any authority—that *exclusively* conditions a noncitizen's re-detention by DHS on DHS's having obtained travel documents. Under these circumstances, the request for injunctive relief is DENIED.

As to the second request, "[t]o have standing to assert a claim for prospective injunctive relief, a plaintiff must demonstrate 'that he is realistically threatened by a repetition of [the violation].'" *G.A.A. v. Chestnut*, No. C25-1102, 2025 WL 3251316, at *7 (E.D. Cal. Nov. 21, 2025) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)). "First, a plaintiff may show that the defendant had, at the time of the injury, a written policy, and that the injury 'stems from' that policy." *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005) (citation modified). "Second, the plaintiff may demonstrate that the harm is part of a 'pattern of officially sanctioned . . . behavior, violative of the plaintiffs' [federal] rights.'" *Id.* (alterations in original) (quoting *LaDuke v. Nelson*, 762 F.2d 1318, 1323 (9th Cir. 1985)). On this particular issue—i.e., re-detention in violation of 8 C.F.R. §§ 241.4 and 241.13—Petitioner has not adequately made a showing of realistic repetition. Petitioner does not demonstrate a written policy, and his only example of Respondents' violation of the regulation is his own case. Under such circumstances, the requested injunctive relief is DENIED.

As to the third request, in this particular case, faced with the particular pleadings before it, the Court does not have sufficient basis for a finding that Respondent's third-country removal

ORDER ON WRIT OF HABEAS CORPUS – 12

program is unconstitutional as a whole, or that third-country removal would be punitive as applied to Petitioner specifically. Cases in this District in which courts *have* found as much, "which were specific to a particular population and particular destination countries, do not extend to these circumstances." *Arenado-Borges v. Bondi*, No. C25-2193, 2025 WL 3687518, at *7 (W.D. Wash. Dec. 19, 2025) (citing *Nguyen v. Scott*, 796 F. Supp. 3d 703, 734 (W.D. Wash. 2025)); *Abubaka v. Bondi*, No. C25-1889, 2025 WL 3204369, at *8 (W.D. Wash. Nov. 17, 2025). In Petitioner's petition, Petitioner makes the conclusory assertion that Respondents' third-country removal policy "is unconstitutionally punative [*sic*]." Dkt. No. 7 at 8. In Petitioner's Reply, Petitioner provides several examples of Respondents' application of their policy to other noncitizens (*see* Dkt. No. 23 at 12), but the Court has repeatedly declined to issue injunctive relief to one party based on the alleged mistreatment of others, particularly where the instant case lacks a sufficient case-specific factual record to support the constitutional claim. *See, e.g.*, *Rea-Hernandez v. Bondi*, No. C25-2609, 2026 WL 322874, at *10 (W.D. Wash. Feb. 6, 2026); *Elshourbagy v. Bondi*, No. C25-2432, 2025 WL 3718993, at *9 (W.D. Wash. Dec. 23, 2025). On this record, the Court cannot find that Petitioner's removal to a third country would constitute unconstitutional punishment. The request is DENIED WITHOUT PREJUDICE.

## IV.   CONCLUSION

Accordingly, Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 7) is GRANTED IN PART and DENIED IN PART. It is hereby ordered:

(1)   Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

(a)   SHALL release Petitioner from detention **no later than 5:00 p.m. on February 13, 2026,** under appropriate conditions of release;

ORDER ON WRIT OF HABEAS CORPUS – 13

(b)     SHALL submit to the Court, within twenty-four (24) hours of Petitioner's release from detention, a declaration confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

(2)   Petitioner's request for injunctive relief regarding any future re-detention is DENIED. This denial is without prejudice to Petitioner's ability to challenge any future re-detention or to seek related injunctive relief, if appropriate.

(3)   Petitioner's request for an order prohibiting third-country removal as unconstitutionally punitive is DENIED without prejudice.

(4)   Petitioner's Emergency Motion for Order Preventing Transfer During Pendency of Petition (Dkt. No. 8) is DENIED AS MOOT.

Dated this 12th day of February, 2026.

Tana Lin
United States District Judge